IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNA R. KING,          )
                        )
            Plaintiff,  )
                        )
     v.                 )     1:18CV377
                        )
ANDREW SAUL,            )
Commissioner of Social Security,[1]  )
                        )
            Defendant.  )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donna R. King ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI[2] on November 13, 2013, alleging a disability onset date of January 21, 2012. (Tr. at 221-30.)[3] Her application was denied initially (Tr. at 76-90, 140-43) and upon reconsideration (Tr. at 91-110, 149-53). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 156-58.) On April 10, 2017, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 37-75.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 7-21), and, on March 12, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

---

[2] Plaintiff previously filed applications for SSI and for Disability Insurance Benefits ("DIB") under Title II of the Act on February 21, 2006 and February 2, 2010, which were denied after hearings by ALJs on March 30, 2009 and January 20, 2012, respectively. (See Tr. at 111-21, 122-35.)

[3] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

2

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> major depressive disorder; post-traumatic stress disorder; and generalized anxiety disorder.

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-14.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could "perform a full range of work at all exertional levels" with further limitations. Specifically, the ALJ found that Plaintiff

> may occasionally interact with others; she retains the capacity to perform simple, repetitive, routine, tasks; [Plaintiff] must be off-task for 10 percent of the workday; and she would be absent from work once a month.

(Tr. at 14.) Under step four of the analysis, the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper as actually and generally performed and therefore was not disabled. (Tr. at 20.)

In Plaintiff's sole assignment of error, she argues that "[t]he ALJ committed a reversible error of law at step three of [the] sequential evaluation by failing to adequately explain why the medical evidence of record does not show that [Plaintiff] meets [L]isting 12.04 for depressive disorders." (Pl.'s Br. [Doc. #11] at 2-3.) In particular, Plaintiff contends that "the ALJ failed to evaluate whether the medical evidence documents at least five of the nine paragraph A criteria" and "failed to provide an adequate explanation for why [Plaintiff] has only a moderate,

rather than a marked, limitation in adapting and managing oneself." (Id. at 5-6.)[6] After a careful review of the record, the Court finds no basis for remand.

"Under Step 3, the regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)).

Effective on January 17, 2017, the Commissioner made revisions to the criteria for evaluating mental disorders in the Listing of Impairments. Listing 12.04 covers "depressive, bipolar and related disorders" and requires a claimant to establish the criteria set out in paragraphs A and B, or A and C. Paragraph A requires:

> A. Medical documentation of the requirements of paragraph 1 or 2:
>
>     1. Depressive disorder, characterized by five or more of the following:
>         a. Depressed mood;
>         b. Diminished interest in almost all activities;
>         c. Appetite disturbance with change in weight;
>         d. Sleep disturbance;
>         e. Observable psychomotor agitation or retardation;

---

[6] Plaintiff incorrectly states that the ALJ found "moderate" limitation in Plaintiff's ability to adapt and manage herself. (Pl.'s Br. at 6.) The ALJ actually found "no limitations" in that functional area. (Tr. at 14.)

7

f. Decreased energy;
                    g. Feelings of guilt or worthlessness;
                    h. Difficulty concentrating or thinking; or
                    i. Thoughts of death or suicide.
            2. Bipolar disorder, characterized by three or more of the following:
                    a. Pressured speech;
                    b. Flight of ideas;
                    c. Inflated self-esteem;
                    d. Decreased need for sleep;
                    e. Distractibility;
                    f. Involvement in activities that have a high probability of
                    painful consequences that are not recognized; or
                    g. Increase in goal-directed activity or psychomotor agitation.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04A.

However, even if the requirements of Paragraph A are met, the claimant must also meet the requirements of Paragraph B or C. In this case, the ALJ concluded that Plaintiff did not meet Paragraph B or C.[7] Plaintiff does not challenge the finding as to Paragraph C, but contends that the ALJ erred in finding that she did not meet the requirements of Paragraph B, which provides as follows:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

---

[7] Plaintiff faults the ALJ for failing to evaluate the paragraph A criteria. However, the ALJ's analysis assumes, without explicitly finding, that Plaintiff's major depressive disorder satisfied the paragraph A criteria of Listing 12.04, and then proceeds to evaluate the criteria of paragraphs B and C of that Listing. (See Tr. at 13-14.) Because the ALJ found that Plaintiff did not meet Paragraph B or C, further analysis of Paragraph A was not necessary, and Plaintiff has not explained how this approach prejudiced her in any way.

8

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04B. In evaluating these criteria, the ALJ found as follows:

> In understanding, remembering, or applying information, the claimant has no limitations. An examiner at Daymark Recovery noted average intelligence on June 20, 2012. Psychiatrist Frantz Pierre, M.D., reported linear, organized and goal-directed thought process on October 12, 2012. The claimant presented on October 8, 2013 as fully alert and oriented. Her knowledge fund was good. Consultative examiner Stephen Burgess, M.D., noted good recent and remote memory on February 11, 2014 and normal cognition on March 17, 2015. Furthermore, recent treatment records at Daymark Recovery Services dated December 13, 2016 show good knowledge fund and insightful, intelligent presentation.
>
> In interacting with others, the claimant has marked limitations. The claimant stated at the hearing that she isolates herself at home from family and avoids dealing with people. The claimant testified that being in a room with 3 people is overwhelming and that she cannot interact with people anymore. A treating provider observed on July 27, 2011 that the claimant was substantially home-confined. Daymark examiners also reported on September 23, 2015 that the claimant generally wants to isolate and thinks that people might be better off without her.
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. The claimant testified at the hearing that her concentration is poor and she can't keep her mind set on one thing. She elaborated that she has a hard time sitting and doing anything for a period of time. However, the clinical record shows generally intact concentration and focus. Consultative examiner Adrian Griffin, M.D., observed on August 16, 2010 that the claimant's ability to sustain concentration and attention was slow but adequate. Examiners noted average intelligence on June 20, 2012, and they noted linear and organized thought process on October 12, 2012. The claimant was fully alert and oriented on October 8, 2013. Furthermore, examiners at Daymark observed on December 13, 2016 that the claimant's knowledge fund was good, her insight and judgment were good, she was insightful and intelligent, and she processed information well.
>
> As for adapting or managing oneself, the claimant has experienced no limitations. The record does not show any deficits in adaptive function. She presented on June 20, 2012 as well-groomed. Examiners at the Surry County Health Department noted appropriate hygiene on April 10, 2013. Providers

> also observed on October 8, 2013 that the claimant was properly groomed with good hygiene, and she was well put together

(Tr. at 13-14 (internal citations omitted).)

Plaintiff challenges only the ALJ's determination with respect to "adapting or managing" oneself. (Pl. Br. at 4-7.) Under the Listing, "[a]dapt[ing] or manag[ing] oneself . . . refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." <u>Id.</u>, § 12.00E.4. Examples of abilities falling under this broad area of mental functioning include:

> Responding to demands; adapting to changes; managing [one's] psychologically based symptoms; distinguishing between acceptable and unacceptable work performance, setting realistic goals; making plans for [oneself] independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

<u>Id.</u> The regulation cautions that the above-quoted examples "illustrate the nature of this area of mental functioning," but that a claimant need not provide "documentation of all of the examples." <u>Id.</u>

Plaintiff specifically contends first, that the ALJ erred by basing his determination on a finding that she "does not show any deficits in adaptive function." (Tr. at 14.) Plaintiff maintains that "[d]eficits in adaptive functioning are not required to meet [L]isting 12.04" but rather "[L]isting 12.05 for intellectual disorder," and thus "[t]he absence of deficits in adaptive functioning is therefore irrelevant to whether [Plaintiff] meets the paragraph B criteria of [L]isting 12.04." (Pl.'s Br. at 6-7.) Second, Plaintiff contends that, "[w]hile it may be true that [Plaintiff] demonstrated good hygiene and/or grooming on three occasions in 2012 and 2013, the ALJ failed to evaluate whether the Daymark Recovery Services treatment notes document

a sustained and seriously limited ability to adapt and manage oneself from February 2015 through December 2016." (Id. at 7.) However, neither of these contentions merit remand.

With respect to Plaintiff's first contention, although the ALJ's use of the phrase "deficits in adaptive function" is similar to Listing 12.05's requirements to show "deficits in adaptive functioning," see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05, that similarity alone does not persuade the Court that the ALJ improperly applied Listing 12.05's requirements to Listing 12.04. Clearly, the broad area of functioning at issue, adapting and managing oneself, involves consideration of Plaintiff's ability to adapt, with overlapping concepts addressed in various provisions of Listing 12.00. In addition, as noted above the Listing explains examples of "adapting and managing oneself" to include "maintaining personal hygiene and attire appropriate to a work setting," and as a part of the analysis at step three for adapting and managing oneself, the ALJ specifically considered Plaintiff's ability to "maintain[] personal hygiene and attire appropriate to a work setting." See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.4. Thus, the ALJ was specifically applying the provisions of Listing 12.04 Paragraph B to "[a]dapt or manage oneself" as defined in the Listings. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.4. Moreover, the ALJ correctly identified and analyzed the other areas of functioning in Listing 12.04's paragraph B criteria. (Tr. at 13-14.) Thus, the ALJ clearly applied Listing 12.04 paragraph B.

In addition, with respect to Plaintiff's contention that "the ALJ failed to evaluate whether the Daymark Recovery Services treatment notes document a sustained and seriously limited ability to adapt and manage oneself from February 2015 through December 2016" (Pl.'s Br. at 7), the Court notes although the ALJ's discussion of Plaintiff's ability to adapt and

11

manage herself at step three provides examples of such functioning from 2012 and 2013, the ALJ's overall analysis of Listing 12.04 includes reports from the medical records from 2012, 2013, 2014, 2015, and 2016, reflecting that Plaintiff had "linear, organized and goal-directed thought process," "good knowledge fund and insightful, intelligent presentation," "insight and judgment were good . . . she processed information well," and she "lives independently and her cognitive function is intact." (Tr. at 13-14.) This, this is not a case where the ALJ ignored the later medical evidence in the record.

Similarly, the ALJ's later discussion as part of the RFC analysis provides further examples from 2014 and 2016. In this regard, the Court notes that the ALJ's analysis as a whole considered all of the relevant treatment notes and included further findings regarding Plaintiff's abilities and the effects of her mental impairments, and concluded that:

> [T]he record also shows generally intact cognitive, social and adaptive function. Dr. Griffin reported on August 16, 2010 that [Plaintiff] was pleasant, quiet and fully oriented . . . Examiners at Daymark Recovery noted good grooming and average intelligence on June 20, 2012. Psychiatrist Frank Pierre later reported on October 12, 2012 that [Plaintiff] was fully alert and oriented, she was cooperative, her speech was regular, her thoughts were linear, organized and goal-directed, she denied suicidal and homicidal ideation, and she denied auditory and visual hallucinations. Subsequent note[s] of April 10, 2013 also show generally good function. [Plaintiff's] hygiene was appropriate and she was alert and oriented. [Plaintiff] was cooperative. Her memory, knowledge fund and concentration were intact, abstract thinking was intact, and her insight and judgment were intact.
>
> [Plaintiff] understandably experienced severe depression and grief reaction following the death of one daughter in June 2013 and another in December 2013. However, her adaptive function, social function and cognition remained essentially intact. Daymark examiners reported on October 8, 2013, that she was properly groomed with good hygiene. She was cooperative, thought process was goal-directed and linear, and her knowledge fund was good. Examiners also noted cooperative manner, good knowledge fund and fair insight and judgment on January 28, 2014. Recent notes also show intact

> function. Examiners reported on April 13, 2016 that [Plaintiff] was well-groomed and neatly dressed. [Plaintiff's] affect on June 7, 2016 was full. Her speech was normal, and thought form and content were unremarkable. Findings on December 13, 2016 were good. [Plaintiff's] knowledge fund was good, insight and judgment were good, and the examiner observed that [Plaintiff] was insightful, intelligent and processed information well.

(Tr. at 18 (internal citations omitted).) In addition, the ALJ's discussion of the evidence includes observations from the consultative examination in 2014, that Plaintiff's "intellectual function was normal, [Plaintiff] was cooperative and recent and remote memory for medical events was good," and "[h]er mood was depressed but cognition was normal." (Tr. at 16.) The ALJ also noted that in 2015, a group counselor from Daymark noted that Plaintiff "did reasonably well and was communicative during sessions" and in 2016, examiners observed that "she was insightful and intelligent, she processed information well and she provided history details that were important despite significant depression and grief." (Tr. at 16-17.) Moreover, the ALJ gave "significant weight" to the opinions of the state agency psychological consultants that Plaintiff was not disabled "because the recent record shows good cognition and adaptive function. . . . For example, examiners noted good knowledge fund, good judgment, and insightful, intelligent manner." (Tr. at 18-19; see also Tr. at 82, 101.)[8]

For all of these reasons, the Court concludes that the challenges raised by Plaintiff would not warrant remand in this case. The ALJ's Listing determination was supported by

---

[8] The state agency psychological consultants found that Plaintiff was "not significantly limited" in her "ability to be aware of normal hazards and take appropriate precautions" and in her "ability to set realistic goals or make plans independently of others," and "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" and in her "ability to respond appropriately to changes in the work setting," and further noted that Plaintiff's "adaptive skills [were] intact" and she was "capable of functioning in a stable, low pressure setting." (Tr. at 86-87, 106-07). Plaintiff has not demonstrated that the record compelled the ALJ to adopt a "marked" limitation in that area of functioning, as required to meet Paragraph B of Listing 12.04.

13

substantial evidence and included sufficient explanation to allow for judicial review, and the Court will not re-weigh conflicting evidence or substitute its judgment for that of the ALJ.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 16th day of August, 2019.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge